UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

In re:

| | | |
|---|---|---|
| 286 WHALLEY AVENUE CORP. | ) | CHAPTER 11 |
| | ) | |
| Debtor | ) | CASE NO. 14-51898 |

**DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**

**1.    INTRODUCTION**

This First Amended Plan of Reorganization (the "Plan") is the proposal of 286 WHALLEY AVENUE CORP. to its Creditors and the holders of Equity Interests pursuant to § 1121(a) of the Bankruptcy Code.

**2.    DEFINITIONS**

The following terms, when used in this Plan, shall have the following meanings as set forth below:

<u>Administrative Claim</u>.    Means a claim for payment of an administrative expense of a kind specified in § 503(b) of the Code and referred to in § 507(a)(1) of the Code, including, without limitation, the actual and necessary costs and expenses incurred after the commencement of the Chapter 11 Cases of preserving the estate and operating the business of the Debtors, including wages, salaries or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the estates under 28 U.S.C. § 1930.

<u>Allowed</u>.    When used in connection with any type of "Claim" or "Equity Interest", means: (a) a Claim or Equity Interest, proof of which was timely filed pursuant to the Orders of the Bankruptcy Court establishing the applicable "bar dates" for the filing of Claims against the Debtor,

and, as to which no timely objection to allowance has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or as to any such timely objection a Final Order of allowance has been entered; (b) a Claim or Equity Interest allowed by a Final Order; (c) a Claim or Equity Interest listed in either of the Debtor's Schedules filed in connection with the Chapter 11 Cases and not identified as contingent, unliquidated or disputed; (d) a Claim or Equity Interest which is fixed and agreed to in amount in writing between the Debtors and any Claimant and allowed by a Final Order or (e) any Claim which is deemed an Allowed Claim pursuant to the provisions of this Plan.

Allowed Secured Claim.    Means an Allowed Claim arising on or before the Petition Date (December 14, 2014) that is secured by a valid Lien on property of the Debtor which is not void or voidable under any state or federal law, including any provision of the Code or an Allowed Claim for which the holder asserts a setoff under Section 553 of the Code, to the extent of the value (which is either agreed to by either Debtor pursuant to this Plan, or in the absence of an agreement, has been determined in accordance with Section 506(a) or 1111(b) of the Code) of the interest of the holder of such Allowed Claim in either of the Debtor's property, or an Allowed Claim that is treated as an Allowed Secured Claim pursuant to this Plan.  That portion of such Allowed Claim exceeding the value of security held therefore shall be an Allowed Unsecured Claim.

Allowed Unsecured Claim.    Means an Allowed Claim which is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, or a Secured Claim.

Ballot.  Means the ballot accompanying the Disclosure Statement upon which holders of Impaired Claims or Impaired Interests entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting.

Bankruptcy Court.    Means the United States Bankruptcy Court for the District of Connecticut, or such other Court as may hereafter have jurisdiction over the Debtors' Chapter 11 Cases.

Bankruptcy Rules.  Means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to 28 U.S.C. § 2075.

Business Day.  Means any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

Cash.    Means currency of the United States of America, or checks payable in immediately available funds of such currency.

Chapter 11 Case.  Means the above-captioned Chapter 11 bankruptcy case of the Debtor.

Claim.    Has the meaning set forth in Section 101(5) of the Code.

Class.    Means Claims or Equity Interests which are substantially similar to the other Claims or Equity Interests in such Class as classified pursuant to Section 4 of the Plan.

Code.    Means the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and all amendments thereto which are applicable to the case.

Confirmation Date.    Means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket maintained by the clerk's office.

Confirmation Hearing.  Means the hearing at which the Bankruptcy Court considers confirmation of the Plan pursuant to Sections 1128 and 1129 of the Bankruptcy Code.

Confirmation Order.    Means the order entered by the Bankruptcy Court confirming the Plan in accordance with Chapter 11 of the Code.

Consummation.    Means the occurrence of the Effective Date.

Debtor or Debtor in Possession.    Means 286 Whalley Avenue Corp..

Disallowed Claim.   Means any Claim or portion thereof:

(a) which is scheduled or proof of which is filed and an objection thereto has been sustained by a Final Order; or

(b) which is scheduled as disputed, contingent or unliquidated and as to which either (i) no proof of claim has been timely filed, or (ii) proof of which has been timely filed and an objection thereto has been sustained by a Final Order.

Disclosure Statement.   Means the Debtor's disclosure statement of even date herewith relating to the Plan and any amendments thereto.

Disputed Claim.   Means (i) every Claim that is scheduled by the Debtor as disputed, contingent or unliquidated, or (ii) every Claim, proof of which is filed and against which an objection to the allowance thereof has been interposed, which objection has not been determined by a Final Order, except for any Claim which is deemed an Allowed Claim by the provisions of this Plan.

Distribution Date.   Means the later of (i) Sixty days (60) after the Effective Date; (ii) the date by which an Allowed Claim is paid hereunder if other than the Effective Date, or (iii) within twenty (20) days after the date on which a Disputed Claim becomes an Allowed Claim.

Effective Date.   Means the first Business Day occurring on or after the date the Confirmation Order is Final and on which (i) no stay of the Confirmation Order is in effect and (ii) all the conditions to the effectiveness of the Plan have been waived or satisfied as provided in the Plan.

Equity Interest(s).   Means any "equity security" of the Debtor, as that term is defined in Section 101(16) of the Bankruptcy Code.

Final Order.   Means an order or judgment of the Bankruptcy Court as entered on the docket in the Chapter 11 Case, or the order or judgment of any other court of competent

jurisdiction, the operation or effect of which has not been reversed, stayed or amended, and as to which order or judgment the time to appeal or to seek review has expired and as to which no appeal or petition for review was filed or, if filed, remains pending.

Lien.  Means any charge against or interest in property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust and statutory lien as defined in Section 101 of the Code.

Objection Deadline.  Means the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of Claims, which date shall be (i) for Administrative Claims, the date that is thirty (30) days after a request for payment of such Claim has been filed and (ii) for all other Claims, the date that is 90 days after the Distribution Date.

Person.  Means any individual, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint stock company, joint stock company, joint venture, estate, trust, unincorporated organization, government or any agency or political subdivision thereof or other entity.

Petition Date.  Means December 14, 2014, the date on which the Debtor filed its petition commencing its Chapter 11 Case.

Plan: Means this Plan of Reorganization of 286 Whalley Avenue Corp. proposed by the Debtor (including all documents and supplements related hereto) either in its present form or as it may hereafter be altered, amended or modified from time to time.

Plan Documents: Means all the documents that aid in effectuating the Plan, substantially in the forms filed with the Bankruptcy Court prior to the Confirmation Hearing, as the same may be amended or modified, including, without limitation, New Senior Secured Notes, Certificate of Designation of New Common Stock and the Shareholder Agreement.

Priority Non-Tax Claim. Means any Claim that is entitled to priority in payment pursuant to Sections 507(a)(3), (4), (5), (6), (7) or (9) of the Code and that is not an Administrative Claim or a Priority Tax Claim.

Priority Tax Claim. Means an Allowed Claim which is entitled to priority pursuant to Section 507(a)(8) of the Code.

Professional Person. Means any Person retained or to be retained or to be compensated by the Debtor pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Code.

Pro Rata Share. Means the proportion that an Allowed Claim or Equity Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Equity Interests in such Class, calculated in accordance with the provisions of this Plan.

Reorganized Debtor. Means the Debtor on and after the Effective Date.

Secured Claims. Means a claim secured by a lien on collateral to the extent of the value of such collateral (a) as set forth in this Plan, (b) as agreed to by the holder of such Claim and the Debtor or (c) as determined by a Final Order in accordance with §506(a) of the Bankruptcy Code, or in the event that such Claim is subject to set off under § 553 of the Bankruptcy Code, to the extent of such setoff.

**3. ADMINISTRATIVE CLAIMS, TAX PRIORITY CLAIMS, AND PRIORITY NON-TAX CLAIMS (UNCLASSIFIED CLAIMS)**

3.1 Administrative Claims. (a) All post-petition payables and other ordinary course expenses shall be paid in the ordinary course of business as agreed between the respective vendors and the Debtor and/or Reorganized Debtor. (b) Other Administrative Claims filed prior to the Confirmation Date other than claims of Professional Persons, unless objected to by the Effective Date, which have not been paid prior to the Effective Date shall be paid in full in Cash on the Distribution Date or upon such terms as otherwise agreed between the Debtor and the holder of such Administrative Claim, (c) Professionals Persons, and any other Person who

may be entitled to reimbursement of expenses or allowance of fees pursuant to §§ 503(b)(2) through §§503(b)(6) of the Code, shall file final applications for allowance and payment of compensation and expenses not later than twenty (20) days after the Effective Date (except counsel to the Debtor which is not subject to such deadline).  Each such Person shall be paid, in Cash, the full amount awarded by the Bankruptcy Court after notice and a hearing, within 10 days after the date on which an Order allowing such claims, fees and/or disbursements becomes a Final Order or upon such other terms as the Parties may agree upon.

    3.2    <u>Priority Tax Claims</u>. Except to the extent that a holder of an Allowed Priority Tax Claim has agreed to different treatment of such Claim, each holder of an Allowed Priority Tax Claim shall receive on account of such claim deferred cash payment with interest in conformance with the applicable state or federal rate (for the IRS it is pursuant IRC § 6621 and for the State of Connecticut it is 12% per annum) over a four year period ending in December 2019.  The first of such deferred cash payments shall be made within the later of December 31, 2015 or within thirty days of the Confirmation Date and thereafter shall be made on a monthly basis. The Reorganized Debtor reserves the right to object to and to pre pay all Allowed Priority Tax Claims.  The Debtor is aware of the following Priority Tax Claims:

1. Internal Revenue Services      $12,533.36
2. CT- Department of Labor        $    407.40
3. City of New Haven              $ 7,427.26
4. CT-Department of Revenue Service $ 3,956.65

    3.3    <u>Priority Non-Tax Claims.</u>  Allowed Priority Non-Tax Claims shall be paid, in Cash, in full on the Distribution Date.

    3.4    <u>U.S. Trustee Fees.</u>  In accordance with §1129(a)(12) of the Bankruptcy Code and 28 U.S.C. §1930, all quarterly fees payable to the United States Trustee shall be paid by the debtor in full on or before their respective due dates and shall continue to be assessed and paid

until such time as a final decree closing, converting or dismissing this case is entered by the Court.

**4. DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS**

All Claims against and Equity Interests in the Debtor, of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all Claims arising from transactions with either of the Debtor and all equity interests arising from the ownership of the stock of the Debtor, whether resulting in an Allowed Claim or not, shall be bound by the provisions of this Plan.  The Claims and Equity Interests are classified as follows:

**Class 1 Allowed Secured Claim of Regional Water Authority**

**Class 2 Allowed Secured Claim Alliance Energy (rent and taxes)**

**Class 3 Allowed Secured Claim of Whalley Ave. Holdings, LLC**

**Class 4 Allowed Unsecured Claims**

**Class 5 Allowed Equity Interests**

**5.    IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS**

5.1    Impaired Classes of Claims.  All Classes of Claims are impaired under the Plan.

5.2    Impaired Classes of Equity Interests.  All Classes of Equity Interests are impaired under the Plan.

5.3    Impairment Controversies.  If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or of Equity Interests, are impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversies.

5.4    Special Note Concerning Voting on Plan. In the event there is a sub class, each subclass will be considered a separate class for voting purposes.

**6. TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN**

Class 1 Allowed Secured Claim of Regional Water Authority

8

1.      Approximate Amount: $15,978.83

2.      Impaired

3.      <u>Treatment</u>:  The allowed secured claim of the Regional Water Authority shall be paid in equal monthly installments over seventy two (72) months commencing in the first month following the Distribution Date with interest at the fixed rate of four percent (4%) per annum on the principal outstanding balance.  This creditor shall retain any lien it has on the subject property, to secure the Allowed Secured Claim to the extent it had a lien, to the same, extent validity and priority such lien had as of the Petition Date to secure the payments set forth in this paragraph.  Notwithstanding the foregoing, the Debtor shall be and is hereby authorized to prepay the allowed secured claim of this creditor without any penalty

<u>Class 2 Allowed Secured Claim of Alliance Energy</u>

1.      Approximate Amount: $20,371.39

2.      Impaired

3.      <u>Treatment</u>:  This creditor asserts a lien for the remaining balance due under its lease, but its Allowed Secured Claim consists of its arrearage of $20,371.39. Commencing on the Distribution Date (the "Alliance Payment Date"), the Allowed Secured Claim of Alliance shall be paid in equal monthly installments over twenty four (24) months with interest at the fixed rate of four (4) % per annum or, on such other rates and terms that the Court may determine.  This creditor shall retain any lien it has on the subject property, to secure the Allowed Secured Claim to the extent it had a lien, to the same, extent validity and priority such lien had as of the Petition Date to secure the payments set forth in this paragraph

   <u>Class 3 Allowed Secured Claim of Whalley Avenue Holdings LLC</u>

1.      Approximate Amount: $110,192.29

2.      Impaired

3.      <u>Treatment</u>:  The Debtor believes there is no equity for this claim.  Pursuant to § 506 (a) and (d), the lien of this creditor shall be avoided as a result of confirmation of the Plan and its claim will be added to and treated as a non priority unsecured claim in Class 4.

   <u>Class 4 The Allowed Unsecured Claims</u>

1.  Approximate Amount: $393,918.44 (including Whalley Avenue Holdings, LLC)

2.  Impaired

3.  <u>Treatment</u>: The Debtor reserves the right to review and if it deems appropriate, to object, contest or otherwise challenge claims post confirmation pursuant to the Plan. On a biannual basis commencing on the six-month anniversary of the Distribution Date and continuing for four (4) years, the Reorganized Debtor shall pay each creditor holding an allowed unsecured claim their pro rata share of the sum of $3,000 in full and final satisfaction of all such claims. The Reorganized Debtor reserves the right to prepay any of these payments to each and/or all of these creditors in this class under the Plan without penalty and in the event of a prepayment by more than five months when such payment is otherwise due, the Reorganized Debtor may discount each such prepayment at a rate of six percent (6%) per annum.

<u>Class 5 Allowed Equity Interests</u>

1.  Approximate Amount: 100%

2.  Unimpaired

3.  <u>Treatment</u>: The holder of Equity Interests shall retain his equity interests in the Debtor under the Plan.

**8.    MEANS FOR FUNDING OF THE PLAN**

8.1    <u>Funding of Payments Required Under the Plan</u>. The payments required under the Plan will be made from the Debtor's and Reorganized Debtor's operations. Dominick Magnotta, the principal of the Debtor also intends to pay back a loan to the Debtor at the rate of approximately $750.00 per month.

**9.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a) <u>General Assumption and Assignment</u>.  All executory contracts and unexpired leases of 286 Whalley Avenue Corp shall be assumed by Reorganized Debtor upon entry of the Confirmation Order unless specifically modified and assumed by agreement with the Lessor or contractive party or rejected by order entered on or prior to the Confirmation Date or unless a

motion to reject any such executory contract or unexpired lease is pending before the Bankruptcy Court on the Confirmation Date.

(b) <u>Bar to Rejection Damages</u>.  If the rejection of an executory contract or unexpired lease by either of the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not previously evidenced by a filed proof of Claim or barred by a Final Order, shall be forever barred and shall not be enforceable against the Debtor or Reorganized Debtor, or their properties or agents, successors, or assigns, unless a proof of Claim relating thereto is filed with the Bankruptcy Court within thirty (30) days after the later of (i) the entry of a Final Order authorizing such rejection and (ii) the Confirmation Date, or within such shorter period as may be ordered by the Bankruptcy Court.

(c) <u>Cure of Defaults for Executory Contracts and Unexpired Leases</u>.  Each executory contract and unexpired lease to be assumed pursuant to the Plan shall be reinstated and rendered unimpaired in accordance with §§ 1124(2) and 365(b)(1) of the Code.  In connection therewith, Reorganized Debtor obligated on each such contract and lease to be assumed pursuant to the Plan shall cure or provide adequate assurance that it will cure any monetary default (other than of the kind specified in § 365(b)(2) of the Bankruptcy Code), by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such executory contract or unexpired lease may otherwise agree, compensate, or provide adequate assurance that the Reorganized Debtor will promptly compensate, parties to such contract or lease for any actual pecuniary loss to such parties resulting from such default and provide adequate assurance of future performance under such contract or lease.  In the event of a dispute regarding: (i) the amount of any cure payments, (ii) the ability of Reorganized Debtor or any of its assignees to provide "adequate assurance of future performance" (within the meaning of section 365 of the

Case 14-51898    Doc 104    Filed 11/10/15    Entered 11/10/15 13:50:08    Desc Main
                Document      Page 12 of 20

Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments or performance required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

**10.     PROVISIONS GOVERNING DISTRIBUTIONS**

10.1 <u>Payments</u>.  Except as otherwise provided in this Plan or ordered by the Court, all payments required under the Plan to Creditors in all Classes will be made on the Effective Date of Plan.

10.2 <u>Unclaimed Distributions</u>.

a.    <u>Escheat to Debtor</u>.    Payments by or on behalf of the Debtor or the Reorganized Debtor, sent to holders of Allowed Claims or other parties in interest pursuant to this Plan shall permanently and irrevocably escheat to Reorganized Debtor and shall not be honored if (i) returned as undeliverable or (ii) uncashed within one hundred and eighty (180) days after the Effective Date, or payment.  Upon the expiration of such one hundred eighty day period, the Debtor and Reorganized Debtor's obligation and liability to any holder of an Allowed Claim or other party in interest whose distribution are returned as undeliverable or has not been acknowledged or cashed shall be deemed satisfied in full and the Debtor and Reorganized Debtor and their respective attorneys, agents, employees, directors and officers shall be forever released and discharged from any liability or obligation whatsoever to that creditor or party in interest.  For purposes of this section, payments made under the Plan shall be conclusively deemed appropriately delivered to a creditor or party in interest if it is sent by first class, postage prepaid, mail to the address of that creditor or party in interest as set forth on the Debtor's schedules, the proof of claim register in the above-captioned cases, or the Debtor's books and records.

b.  **After Distributions Become Undeliverable**.  (i) Uncashed or undeliverable payments made by the Debtor shall not be entitled to any interest, dividends or other accruals of any kind.  Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within 180 days after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before the later of (i) the first anniversary of the Effective Date; or (ii) ninety (90) days after the date of issuance of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred.

**11.    PROCEDURES FOR RESOLVING AND TREATING CONTESTED AND CONTINGENT CLAIMS AND EQUITY INTERESTS**

11.1 **Objection Deadline**.  As soon as practicable, but in no event later than the Objection Deadline, objections to Disputed Claims shall be filed with the Bankruptcy Court and subsequently served upon the Holders of each of the Disputed Claims.

11.2 **Responsibility for Objection to Disputed Claims and Prosecution of Objections**. Reorganized Debtor shall have the exclusive responsibility for objecting to Claims following the Confirmation Date.  On and after the Confirmation Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement, or withdrawal of all objections to Disputed Claims shall be the responsibility of Reorganized Debtor.

11.3 **No Distributions Pending Allowance**.  Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to a Disputed Claim unless and until all objections to such Disputed Claim have been determined by Final Order.

11.4 **Distribution After Allowance**.  Distributions from Reorganized Debtor to each Holder of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which

the Disputed Claim belongs. As soon as practicable after the date the order of judgment of the Bankruptcy Court allowing such Claim becomes a Final Order, but in no event later than twenty (20) days after such Claim becomes an Allowed Claim, any consideration that would have been distributed in respect of the Disputed Claim had it been an Allowed Claim at the Effective Date shall be distributed, without interest, to the Holder of such Claim.

11.5  Treatment of Contingent Claims.  Until such time as a Contingent Claim becomes fixed and absolute, such Claim shall be treated as a Disputed Claim for purposes related to estimations, allocations, and distributions under the Plan.

**12. CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN**

12.1 Conditions to Confirmation. The following are conditions precedent to the occurrence of the Confirmation Date: (i) the entry of an order finding that the Disclosure Statement contains adequate information pursuant to Section 1125 of the Bankruptcy Code and (ii) the proposed Confirmation Order shall be in form and substance acceptable to the Debtors.

(i) Conditions to Effective Date. The Effective Date of the Plan shall not occur unless and until each of the following conditions has been satisfied:

(ii) Finality of Confirmation Order. The Confirmation Order shall have become a Final Order.

(iii) Execution and Delivery of Documents. All other actions and documents necessary to implement the terms and provisions hereof shall have been effected or executed and delivered.

**13. JURISDICTION**

13.1 Continuing Jurisdiction.  The Bankruptcy Court shall retain and have exclusive jurisdiction over the Debtors' Chapter 11 cases for purposes (a) through (i) below:

(a) To determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims or Equity Interests;

(b) To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Code or the Plan;

(c) To determine any application pending on the Effective Date for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party or may be liable, and to hear and determine, and if need be, to liquidate, any and all claims arising therefrom;

(d) To determine any and all applications, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date;

(e) To consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency on any Order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Code;

(f) To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or obligations arising thereunder;

(g) To consider and act on the compromise and settlement of any Claim against or cause of action by or against either of the Debtors' bankruptcy estate;

(h) To issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Code; and

(i) To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order.

## 14. MODIFICATION.

14.1 <u>Modification of Plan</u>.  The Plan may be modified at any time after Confirmation and before its substantial Consummation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Code, and the Bankruptcy Court, after notice

and a hearing, confirms the Plan, as modified, under Section 1129 of the Code. A holder of a Claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection by a writing filed with the Bankruptcy Court.

**15.    DISCHARGE**.

15.1    Discharge and Reversion of Property.

(a) Pursuant to Section 1141(b) of the Code and, except as otherwise dealt with in this Plan, Confirmation of the Plan vests all of the property of the Debtor's estate in Reorganized Debtor. Property of Debtor's estate, which shall vest in Reorganized Debtor shall include, without limitation, all rights and interests in, to and under all patents, trademarks, patent and trademark applications, trade names, licenses, copyrights and inventions.

(b) Pursuant to Section 1141(c) of the Code, on the Effective Date of the Plan, the property dealt with by the Plan shall become free and clear of all liens, claims, encumbrances, and interests of creditors, except as otherwise provided for in the Plan or the Confirmation Order.

15.2    Discharge of the Debtor. Except as otherwise provided in the Plan, all consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all claims of any nature whatsoever against either of the Debtor; and except as otherwise provided herein, upon the Effective Date, each of the Debtor shall be deemed discharged and released (but only to the extent permitted by Section 1141 of the Code, including specifically Section 1141(d)(3)) from any and all claims, including but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Code; (b) a claim based upon such debt is allowed under Section 502 of the Code; or (c) the holder of a claim based upon

such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor. As provided in Section 524 of the Code, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a claim discharged, and operate as an injunction against the prosecution of any action against the Debtor or its property to the extent it relates to a claim discharged.

15.3 <u>Discharge of Claims</u>. Except as otherwise provided herein or in the Confirmation Order, (a) the rights afforded in this Plan and the payments and distributions to be made hereunder shall be in complete exchange for, and in full satisfaction, discharge and release of all existing debts and claims of any kind, nature or description whatsoever against either of the Debtor or against its bankruptcy estate, assets or properties, (b) all existing claims against of the Debtor shall be deemed to be satisfied, discharged, and released in full upon the Effective Date, and (c) all holders of claims shall be forever barred and precluded from asserting against Reorganized Debtor or its assets or properties based upon any act or omission.

**16. PROVISIONS TO INVOKE CRAMDOWN PROCEEDINGS AND/OR SECTION 506 HEARING, IF NECESSARY**

16.1 <u>Cramdown</u>. If all of the applicable requirements of Section 1129(a) of the Code, other than subparagraph 8, are found to have been met with respect to the Plan, the Debtor will seek Confirmation pursuant to Section 1129(b) of the Code. For purposes of seeking Confirmation under the cramdown provisions of the Code, the Debtor reserves the right to modify or vary the treatment of the claims of any rejecting Class so as to comply with the requirements of Section 1129(b) of the Code.

16.2 <u>Section 506 Hearing.</u> If there is a dispute regarding whether or not a holder of a Claim holds a Secured Claim within the meaning of Section 506 of the Code, then the Debtor will seek a valuation of the alleged collateral at or prior to the time of the Confirmation Hearing.

**17. GENERAL PROVISIONS**

17.1 <u>Post-Confirmation Actions</u>.  Nothing herein contained shall prevent the Debtor from taking such action as may be necessary to enforce any rights or prosecute any cause of action existing on its behalf, which may not have been heretofore enforced or prosecuted.

17.2   <u>IRS Default</u>.  If the debtor (defined in this paragraph to also include any successor in interest) fails to (a) make to the IRS any deposit or payment of any (1) currently accruing employment tax liability, (2) tax or (3) payment required under this plan by the due date of such deposit or payment, or (b) file any required Federal tax return by the due date of such return, then the United States may declare that the debtor is in default upon notice to the debtor. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the debtor is in default. If the United States declares the debtor to be in default and full payment is not made or any required return is not filed within (30) days of such notice, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately, the IRS may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code or by any other procedure authorized by law, and any automatic stay under 11 USC § 362(a) in effect is lifted for this purpose without further order of the Court.

17.3  <u>Rules of Construction</u>.  Unless otherwise specified, all references to the singular shall include the plural and vice versa.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise effect the provisions of the Plan.  Words and terms defined in Section 101 of the Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan.  The Rules of Construction contained in Section 102 of the Code shall apply to the construction of the Plan.

17.4 <u>Governing Law</u>.  Unless an applicable rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) the internal laws of the State of <u>Connecticut</u> shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as may otherwise be provided in such agreements, documents, and instruments.

17.5 <u>Filing of Additional Documents</u>.  On or before the conclusion of the Confirmation Hearing, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

17.6 <u>Severability</u>.  Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provisions of the Plan.

17.7 <u>Notices</u>.  All notices, requests, or demands for payments provided for in the Plan shall be in writing and shall be deemed to have been given when personally delivered by hand, or deposited in any general or branch post office of the United States postal service, or received by telex or telecopier; notices, requests and demands for payments shall be addressed and sent, postage prepaid, or delivered in the case of notices, requests, or demands for payments to the Debtor or the Reorganized Debtor, and at any other address designated by the Debtor by notice to each Holder of an Allowed Claim.

    With a copy to:

    Matthew K. Beatman, Esq.
    ZEISLER & ZEISLER, PC.
    10 Middle Street, 15th floor
    P.O. Box 1200
    Bridgeport, CT 06604

[THE BALANCE OF THIS PAGE WAS INTENTIONALLY LEFT BLANK]

Dated this __9__ day of November, 2015.

                         286 Whalley Avenue Corp.

                         By: _____
                         Dominick Magnotta
                         Its Owner
                         Duly Authorized

Attorneys for the Debtor

Matthew K. Beatman, Esq.
ZEISLER & ZEISLER, PC.
10 Middle Street, 15th floor
P.O. Box 1200
Bridgeport, CT 06604
Telephone 203-368-4234